IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CYNTHIA S. CARTWRIGHT**     * | |
| Plaintiff     * | |
|         * | |
| v.     * | Civil No. **PJM 12-1978** |
|         * | |
| **HOWARD HUGHES**     * | |
| **MEDICAL INSTITUTE**     * | |
| Defendant.     * | |
|         * | |

**MEMORANDUM OPINION**

Cynthia Cartwright has sued Howard Hughes Medical Institute ("HHMI")[1], alleging that HHMI fired her in retaliation for exercising her rights under the Family Medical Leave Act ("FMLA") (Count I), and claiming as well intentional infliction of emotional distress ("IIED") (Count II).  HHMI has filed a Motion to Dismiss Cartwright's IIED count for failure to state a claim.  Cartwright opposes the Motion and requests leave to amend the Complaint.

HHMI's Motion to Dismiss Count II is **GRANTED** and Cartwright's request to amend is **DENIED**.

\* \* \*

A motion to dismiss for failure to state a claim tests the sufficiency of a complaint, but it does not resolve factual contests, the merits of a claim, or the applicability of defenses. *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering such a motion, the Court accepts the well-pleaded allegations in the complaint, and draws any

---

[1] HHMI is located in Chevy Chase, Maryland.

reasonable factual inferences in favor of the plaintiff.  *See Burbach Broad. Co. v. Elkins Radio Corp.,* 278 F.3d 401, 406 (4th Cir. 2002).  The Court should only grant a motion to dismiss if the plaintiff cannot provide enough factual support to establish a facially plausible claim or create a reasonable inference of defendant's culpability.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition, the Court should freely give leave to amend the complaint when justice so requires.  *See* Fed.R.Civ.P. 15(a)(2).  However, the Court has discretion to deny requests to amend when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile."  *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir.1999) (*quoting Johnson v. Oroweat Foods Co.,* 785 F.2d 503, 509 (4th Cir.1986)). "Leave to amend ... should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510–11.

Maryland courts have established very strict requirements for claims of intentional infliction of emotional distress, holding the claim should be used only sparingly and that it is "rarely viable." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby,* 607 A.2d 8, 11 (Md. 1992); *Bagwell v. Peninsula Regional Med. Ctr.,* 665 A.2d 297, 319 (Md. Ct. Spec. App. 1995). The successful IIED claim requires demonstrating that:

> (1) The conduct is intentional or reckless;
> (2) The conduct is extreme and outrageous;
> (3) There is a causal connection between the wrongful conduct and the emotional distress;
> (4) The emotional distress is severe.

*See Harris v. Jones,* 380 A.2d 611, 614 (1977).  All elements of the claim must be proven.  Even if severe emotional distress results from the conduct, the plaintiff cannot set forth an IIED claim without proof that the conduct was indeed extreme and outrageous.  *Interphase Garment*

*Solutions, LLC v. Fox Television Stations, Inc.,* 566 F. Supp. 2d 460, 466 (D. Md. 2008) (rejecting a claim of IIED because, even though plaintiff made several stress-related hospital visits as a result, a false television report did not constitute extreme and outrageous conduct). The conduct in question must be "so outrageous in character, and so extreme in degree," to be considered "opprobrious behavior" and "utterly intolerable in a civilized community." *Hines v. French,* 852 A.2d 1047, 1060 (Md. 2004). An employer's conduct qualifies as extreme and outrageous if it is of the type that surpasses all boundaries of societal decency and renders the recipient unable to function or attend to necessary daily matters. *Mitchell v. Baltimore Sun Co.,* 883 A.2d 1024 (Md. Ct. Spec. App. 2005) (internal citations omitted). It is difficult for plaintiffs to prevail on an IIED claim.

* * *

In her Complaint, Cartwright alleges that she received positive reviews during the first decade of her employment with HHMI, even receiving a special performance award/bonus in 2010. However, beginning in January 2011, she says things changed. For example, Landis Zimmerman, one of her supervisors, sharply interrogated her about two assignment deadlines, accused her of exercising poor judgment, and implied that she was lying about her work. As a result of her stressful job and her confusion and alarm over Zimmerman's hostility, Cartwright ended up missing two weeks of work and was admitted to the hospital for mental health reasons. This was approved as FMLA leave. Cartwright nonetheless continued to assist in planning a major meeting while she was gone. After Cartwright returned to work, Zimmerman criticized her for missing the meeting, saying this was not the first meeting she had missed and dismissing her medical reason for being out of the office by saying that, "Everyone has stress and they don't handle it this way. We can't have people that can't handle stress."

About a month later, Zimmerman and Anil Madhok, Cartwright's immediate supervisor, informed Cartwright her that she would get a new, intermediate supervisor, who would act as a go-between for her and Madhok. Cartwright's job responsibilities, which she had had for the past decade, were to be divided between Cartwright and her subordinate. When Cartwright asked what would be expected of her each day, Zimmerman responded demeaningly, saying, "You'll get up, put your shoes on, tie them… ."

Nora Tiller, Cartwright's new supervisor, soon removed all of Cartwright's supervisory responsibilities. Madhok frequently checked in on Cartwright to see where she was on the status of assignments. Meanwhile, things with Zimmerman did not improve. Once, while Cartwright was in the process of fixing technical errors in a paper for Zimmerman, he yelled at her for failing to follow directions, retook control of the project, and then announced, "I just did your job for you" in front of Cartwright's co-workers he was finished. Cartwright felt humiliated.

In September 2011, Madhok warned Cartwright that Zimmerman was reporting negative feedback for her performance review. Indeed, when Cartwright received the review, it was overwhelmingly negative, with a rating of "Unsatisfactory." The review accused Cartwright of failing to report to work and being unavailable for several weeks, and it omitted all of her accomplishments. Cartwright was demoted to the position of Office Manager. Cartwright sent a rebuttal of the performance review to the Employee Relations Manager, the Interim Director of Human Resources, and Tiller, stating that she believed the negative review was submitted in retaliation for her use of FMLA leave. Cartwright also submitted a complaint about Zimmerman.

Following these events, the Human Resources Department asked Cartwright what investigation she intended for them to conduct and who she wanted to spearhead the

4

investigation, but never pursued the issue.  Though Human Resources determined that a mistake had been made, and Cartwright was supposed to be classified as a "Senior Investment Relations Administrator," she was required to vacate her office, work from the reception area, and serve as "back-up" to her former subordinate.  The day after Cartwright moved to her new workspace, Tiller terminated Cartwright for rejecting the new job and exhibiting a poor attitude.  When Cartwright refused to fill out a General Release agreement, HHMI classified her termination as "involuntary … due to substandard performance and unacceptable behavior."

The Complaint asserts that Cartwright has suffered lost wages, loss of health benefits, loss of retirement benefits, lost career and business opportunities, damage to her reputation and career, embarrassment, and humiliation.  It also asserts she has experienced emotional and mental distress with physical manifestations of insomnia, physical incapacitation, paranoia, intimidation, debilitation, fear, anxiety, lack of ability to concentrate or focus, fatigue, intense depression and other symptoms for which she has been hospitalized.

In her opposition to the Motion to Dismiss, Cartwright also states that in addition to her first hospitalization, she was hospitalized for a second time later on during her employment with HHMI.  Cartwright requests leave to amend the Complaint to add this second hospitalization as further evidence of her emotional distress.

* * *

On the facts alleged, and drawing all inferences in Cartwright's favor, the intentional infliction of emotional distress claim cannot stand.  The short of the matter is that Cartwright cannot meet the second IIED requirement—outrageous and extreme conduct.  Quite simply, the inappropriate behavior allegedly exhibited by Cartwright's supervisors does not, as a matter of law, measure up to the extreme and outrageous conduct required for this tort.  Though

Zimmerman's means of expressing his frustration with Cartwright may have been rude and unprofessional, his interactions with her did not surpass the bounds of decency, again as required for this tort. Maryland courts have repeatedly determined that yelling, negative performance reviews, petty humiliation and even minor unwanted physical conduct fail to qualify as extreme and outrageous conduct by an employer. *See Continental Cas. Co. v. Mirabile*, 449 A.2d 1176, 1178, 1186 (Md. Ct. Spec. App. 1982). Likewise, an employer does not engage in extreme and outrageous conduct by requiring an employee to work for fifteen days in a row, suspending her in front of her colleagues, or demoting her. *Weathersby*, 607 A.2d at 10, 16.

Here, Zimmerman's supposed interactions with Cartwright were limited to shouting and curtness and involved no physical interaction. His supposed contributions to her negative performance review, while they may not necessarily have been a fair portrayal of her work ethic, are not so heinous as to qualify as "utterly intolerable" in our society. Madhok's and Tiller's purported conduct falls even farther outside the realm of "utterly intolerable." The alleged actions of Zimmerman and the other supervisors—requiring Cartwright to work at the reception area, demoting her, and ultimately terminating her—are actions common to many workplaces, and not extreme or outrageous.

Although the case fails on the extreme and outrageous element alone, as currently pled in the Complaint, Cartwright also arguably fails to demonstrate the third and fourth elements required for an IIED claim. As to the third element—requiring a connection between the behavior and the distress—it may be noted that Cartwright's first hospitalization occurred before a majority of the wrongful conduct did, which significantly diminishes any causal connection between most of the behavior and that instance of emotional distress. Similarly, Cartwright's current Complaint fails on the severity prong—though she lists symptoms, such as insomnia,

anxiety, and depression as physical manifestations of emotional distress, she has failed to provide any specific instances in which these conditions have impeded her ability to complete basic, daily tasks (other than the initial hospitalization, which happened before the vast majority of the conduct alleged).

Amendment of the Complaint would nevertheless be futile. This essentially straight-forward employment discrimination claim cannot be transformed into a separate cause of action for intentional infliction of emotional distress.  It should be noted, however, that if Cartwright is successful as to her *underlying* claim of employment discrimination, any related emotional distress would be compensable.

* * *

For the reasons discussed above, HHMI's Motion to Dismiss Count II is **GRANTED** and Cartwright's request to amend is **DENIED.**

A separate Order will **ISSUE.**

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**February 1, 2013**